IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **GARY ODOM** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:08-CV-331 |
| | § | |
| **MICROSOFT CORPORATION,** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Microsoft Corporation's Motion to Transfer Venue, (Doc. No. 19), Reply in Support, (Doc. No. 32), and Plaintiffs' Memorandum in Opposition, (Doc. No. 26), and Surreply in Opposition, (Doc. No. 34). The Court held a hearing on the motion on January 12, 2009.

For the reasons stated below, Defendant's Motion is **GRANTED**.

**BACKGROUND**

In this suit, Plaintiff Gary Odom, the sole inventor and owner of U.S. Patent No. 7,363,592 ("the '592 patent"), alleges that Microsoft infringes the '592 patent by the manufacture and distribution of Microsoft's Office 2007 software. Microsoft asserts that during the time period in which Odom filed and prosecuted the patent applications underlying the '592 patent, Odom was a technical consultant for Microsoft, and also for Microsoft's outside counsel, on Microsoft patent matters, including at least one litigation that involved Microsoft's Office line of software.

Since at least 1999, Odom has resided in Oregon and operated an Oregon consulting company, Patent Hawk, LLC, with its principal place of business in Portland. From 1999 until 2001, Odom was employed by the law firm Klarquist Sparkman LLP, ("Klarquist"). From 2001 until 2003, Plaintiff provided independent consulting services for Klarquist. During this time, Klarquist represented Defendant Microsoft in various patent disputes. From 2001 to 2004, Plaintiff provided

independent consultation directly to Microsoft.

Microsoft is a Washington corporation with its principal place of business in Redmond, Washington. Microsoft claims that the development team for the accused Office 2007 software is located in Redmond, and the documents, witnesses, and source code related to that software will likely all be found in Redmond. (Harmon Decl. at ¶ 4.) Moreover, Microsoft's in-house legal team, including the individual lawyers who worked with Plaintiff, is located in Redmond. (Harmon Decl. at ¶ 5.)

Microsoft has submitted a Confidentiality and Non-Disclosure Agreement signed on August 31, 1999 between Odom and Klarquist. The agreement states that, in order to avoid conflicts of interest, Odom would give Klarquist notice before bringing an infringement action against a Klarquist client, and that Klarquist would have an opportunity to investigate his allegations before suit was brought. The agreement also contains a clause designating Oregon as the forum for litigation arising out of the agreement.

Microsoft insists that Odom never gave notice to or sought the approval of Klarquist before filing this infringement action. Microsoft also claims that Odom signed a number of other agreements specifically tailored to patent cases brought by Klarquist on behalf of Microsoft. For example, one such contract, covering Odom's work on litigation between Microsoft and Martin Reiffin, required that Odom inform Klarquist before he filed or prosecuted any patent application relating to the subject matter on which he consulted under the agreement: "you agree to let us know before you file or prosecute any patent applications relating to subject matter you consult with us on (or for any reason publish in such areas)." *Id.* at Ex. 2. The *Reiffin* case, which is still pending, includes allegations of patent infringement by versions of Microsoft Office software. *See Reiffin v.*

*Microsoft Corp.*, 214 F.3d 342, 345 (Fed. Cir. 2000). At the time Odom agreed to this provision, and began to work on the *Reiffin* matter, he was prosecuting the parent application underlying the '592 patent that he alleges is infringed in this case.[1] Microsoft contends that Odom's agreements with Klarquist are relevant to its defenses of unclean hands and equitable estoppel. Microsoft has now filed a motion to transfer venue to the District of Oregon under section 1404(a).

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.,* 144 F.Supp.2d 673, 676 (E.D.Tex.2001); *Mohamed v. Mazda Corp.,* 90 F.Supp.2d 757, 768 (E.D.Tex.2000). The party seeking transfer of venue must show good cause for the transfer. *In re Volkswagen of America, Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The moving party must show that transfer is "clearly more convenient." Otherwise, a plaintiff's choice of venue must be respected. *Id.*

When deciding whether to transfer venue, a district court balances two categories of interests:

---

[1] Specifically, the *Reiffin* contract is dated August 21, 2001. (Vandenberg Decl. at Ex. 2.) Odom filed the patent application underlying the '592 patent on May 9, 2005, and that application claims priority to an application that was filed November 6, 2000. Moreover, the file history of the '592 patent indicates Odom prosecuted both of these applications himself. (Sayles Decl. at Exs. 1 and 2.)

the private interests, *i.e.*, the convenience of the litigants, and the public interests in the fair and efficient administration of justice. *Id.* at *8. The private interest factors weighed by the court include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized interests decided at home, (3) the familiarity of the forum with the law that will govern the case, and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.*; *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. May 18, 2004) ("*Volkswagen I*"). None of the factors are dispositive on their own. *Id.*

Two recent appellate opinions must be addressed in determining whether transfer is appropriate in this case. *Volkswagen II* involved a products liability claim stemming from an automobile collision in Dallas. 545 F.3d at 307. In that case, the Fifth Circuit granted a writ of mandamus requiring the Eastern District of Texas to transfer the case to the Northern District of Texas. *Id.* at 307. It found that the trial court had erred by giving inordinate weight to the Plaintiff's choice of venue, and by not giving appropriate weight to, among other things, the location of proof, the cost of attendance of willing witnesses, the availability of compulsory process and the localized interest of the fora. *Id.* at 318. Thereafter, the Federal Circuit, relying on *Volkswagen II*, granted a writ of mandamus requiring the Eastern District of Texas to transfer a patent case to the Southern District of Ohio. *In re TS Tech USA Corp.*, No. 888, 2008 WL 5397522 at *5 (Fed. Cir. Dec. 29, 2008). It found that, in the underlying case *Lear Corp. v. TS Tech USA, Inc.*, No. 2:07-CV-406 slip op. (E.D. Tex. Sept. 10, 2008), the trial court erred by (1) giving too much weight to the plaintiff's

4

choice of forum, (2) failing to recognize the cost of attendance of witnesses, (3) failing to recognize the ease of access to sources of proof, and (4) disregarding Fifth Circuit precedent in analyzing the public interest in having localized interests decided at home. *Id.* These cases will be discussed in more detail below.

## ANALYSIS

The first question a court must address when ruling on a motion to transfer venue under 28 U.S.C. § 1404 is whether the suit could have been filed originally in the destination venue. There is no dispute that this case could have been filed in the District of Oregon.

### I. The Private Interest Factors

*The Relative Ease of Access to Sources of Proof*

In *Volkswagen II*, the Fifth Circuit held that although technological advancements have generally reduced the discovery burden on parties, this factor is still important, and must be considered carefully. *Volkswagen II*, 545 F.3d at 316. In *TS Tech*, the Federal Circuit, citing *Volkswagen II*, held that because the physical evidence, headrests and documents, were found in Ohio, Michigan and Canada, the trial court erred in not weighing this factor in favor of transfer. At the hearing in this case, Defendant argued that *TS Tech's* source of proof analysis controls. 2008 WL 5397522 at *4. It contends that the location of documentary evidence must be considered even if the evidence is in electronic form and can easily be sent to any location in the country. It points out that in *Lear*, the trial court stated that this factor was neutral because many of the documents were stored electronically and that documents can be easily transported to Texas. No. 2:07-CV-406 slip op. at *5. The Federal Circuit found this conclusion to be clear error. *TS Tech*, 2008 WL 5397522 at *4.

In this Court's view, *TS Tech's* conclusion is distinguishable from this case. The accused

product is software with source code being a key component of each side's case. Defendant has not made any showing that documentary physical evidence, *i.e.*, a physical accused product or file cabinets full of documents, is at issue in this case. It relies primarily on the idea that while source code is stored electronically, it is still important to consider where the electronic information is stored. This argument is inconsistent with the language of § 1404(a) which allows a court to transfer a case "for the convenience of the parties." Because electronic information can be accessed conveniently in any number of locations,[2] not simply the location where the information is "stored," it does not follow that transfer to the location of the stored information is more convenient for anyone. *See Aloft Media LLC v. Adobe Sys. Inc.*, No. 6:07-cv-355, 2008 WL 819956 at *4 (Mar. 25, 2008) ("[a]ny convenience or burden associated with electronic discovery bears little, if any, relation to the physical location of the underlying document").

Further, it is important to note that *TS Tech* found that "all of the physical evidence, including the headrests and the documentary evidence, are far more conveniently located near the Ohio venue." *TS Tech*, 2008 WL 5397522 at *4. The *TS Tech* court appears to be emphasizing the physical nature of the evidence at issue and that such evidence, including actual physical objects, would be more easily transported to Ohio. The Court did not address the appropriate weighing of the location of electronic information in the transfer analysis. Under the facts of this case, therefore, this Court finds that both venues, Texas and Oregon, are equally convenient with regard to access to the sources of proof.

*The Cost of Attendance for Willing Witnesses*

---

[2]For example, electronic information pertaining to the accused software may be transported to different locations via a laptop computer, a CD, a disk, a flash drive, etc.

In *TS Tech*, the Federal Circuit noted that "[a]ll of the identified key witnesses in this case are in Ohio, Michigan, and Canada" and found that the district court committed clear error by not "considerably weigh[ing]" this factor in favor of transfer. 2008 WL 5397522 at *4. This indicates that the convenience of party witnesses is relevant to the venue transfer analysis.[3]

One issue the Federal Circuit did not explicitly address is what showing a movant must make under this factor. Movants are generally required to list relevant witnesses and outline the substance of their testimony so that the Court can determine the importance of each witness. *See Lear*, No. 2:07-cv-406, slip op. at *4; *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993); *Chesapeke Operating, Inc. v. Stratco Operating Co.*, No. A-06-CA-991-LY, 2007 WL 788166 at *4 (W.D. Tex. Mar. 14, 2007). Occasionally, movants have been required to make this showing by way of affidavit. *See, e.g., In re Triton Secs. Litig.*, 70 F. Supp. 2d at 688. In *Volkswagen II*, the Fifth Circuit rejected the argument that a movant must submit an affidavit identifying each proposed witness and outlining their testimony. 545 F.3d at 317 n. 12. The defendant in that case submitted a list of proposed witnesses, which explained their connections to the case, and it explained why the testimony of certain key witnesses was important to the case. *Id.* at 317. Although the Fifth Circuit relied on this information in *Volkswagen II*, it has never explicitly held that such a list is required. From the Court's opinion in *TS Tech*, it appears that the movant simply identified key party witnesses that were likely to give testimony and showed that those witnesses were closer to Ohio than Texas.

---

[3] In *TS Tech*, the Plaintiff pointed out that two of the identified witnesses were nonparty witnesses located outside the transferee district. Nonetheless, the Federal Circuit did not address the relative importance of party and nonparty witnesses, possibly because all of the identified witnesses resided in the same general geographic area, none resided in Texas, nor were they dispersed randomly around the country.

In this case, Defendant has identified one nonparty witness, an attorney at the Klarquist firm located in Portland, Oregon, with knowledge of the agreements signed between Odom and Klarquist. In addition, Defendant's in house counsel, William Harmon, states that attorneys in Microsoft's in house legal department, who worked directly with Odom, are located in Redmond, Washington. These witnesses are important for Defendant's defenses of equitable estoppel and unclean hands. Likewise, the development team for Microsoft Office 2007 with knowledge of the accused product's development and operation, is located in Redmond, Washington. (Harmon Decl. ¶¶ 4-6.).

Plaintiff argues that a list identifying with specificity the name and location of witnesses and the testimony they are expected to provide is required because otherwise there is no way of knowing where the witnesses are actually located. Defendant argues that a specific list of key witnesses and their exact location is not required, particularly when both Plaintiff's and Defendant's key witnesses are located in the same general area. Although the specific showing in each case must vary depending on the facts of each case, here, the Court finds that Defendant has provided a sufficient identification of key witnesses. To require a more specific showing from Defendant in this case would only result in unnecessary delay in the resolution of this Motion. Although Plaintiff contends that Defendant has not shown that witnesses with, for example, knowledge of the development of the accused software still, in fact, live in Washington, Plaintiff has not meaningfully attacked Defendant's assertion that most of the key witnesses in this case are located in Oregon and Washington. Nor has Plaintiff proffered a list of key witnesses located in Texas or randomly across the country. The Court sees no meaningful difference between the identification of key witnesses in this case and that done in *TS Tech*.

This is not a case where witnesses are spread out all over the country or the world. *Cf.*

*Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 800, *mandamus denied*, 183 Fed. Appx. 967 (Fed. Cir. 2006) (finding this factor neutral where witnesses were located in Connecticut, New York, California, Taiwan, and Israel); *Aloft Media LLC*, 2008 WL 819956 at *5-7 (finding this factor neutral where witnesses were located in London, New York, Virginia, California, and Texas). Plaintiff resides in Oregon, the forum to which Defendant seeks transfer.[4] At the hearing, Plaintiff identified one potential witness that resides in Texas. However, as in *TS Tech*, the vast majority of identified key witnesses in the case are much closer to Oregon than Texas. *See* 2008 WL 5397522 at *4. As the Fifth Circuit noted "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 204-05). Under *TS Tech*, because these witnesses would need to travel approximately an additional 1700 miles to reach Tyler, this factor must weigh considerably in favor of transfer.[5]

---

[4] Concerning the location of the plaintiff's witnesses, this Court has noted that when a plaintiff files suit in a particular forum it is presumed to be more convenient for the plaintiff to litigate in that forum. *See J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 6:08-cv-211, 2008 WL 5378010 at *6 (E.D. Tex. Dec. 23, 2008); *ConnecTel, LLC v. Cisco Sys., Inc.*, No. 2:04-cv-396, 2005 WL 366966 at *4 (E.D. Tex. Feb. 16, 2005). At the hearing, Plaintiff argued that while it is true that it would be more expensive for Plaintiff to travel to Texas, there are convenience considerations more important to Plaintiff than simply the cost of a plane ticket and longer travel time. Specifically, Plaintiff pointed out this Court's shorter time to trial as a factor Plaintiff weighed in determining the convenience of litigating in this forum. In Lear's response to TS Tech's petition, Lear pointed out that its witnesses "are happy to go to Texas." The *TS Tech* court did not address this issue, possibly because all of the identified witnesses resided in the same general geographic area, none resided in Texas, nor were they dispersed randomly around the country. Thus, with facts here similar to those in *TS Tech*, this Court sees no reason to address any considerations other than the fact that it would cost less in time and money for Plaintiff to attend trial in Oregon, since that is where he resides.

[5] Plaintiff also argues that, because Microsoft has been involved in numerous patent cases in this District, it cannot now complain that litigating here would be inconvenient. Without knowing the facts of each of those past cases, the Court cannot assess whether Microsoft has made representations that would somehow prevent it from requesting transfer to another forum. Furthermore, given the fact specific nature of venue transfer analysis, it is unlikely that Microsoft's prior litigation in this District would be highly relevant to the analysis in this case.

*Availability of Compulsory Process*

At this point, the parties have identified two potential nonparty witnesses in this case, a Klarquist attorney in Oregon and a potential witness in Texas. There is no indication that either of them would be unwilling to testify at trial. Regardless, because each venue may be able to compel at most only one witness to testify, this factor is neutral.

*All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

The parties do not address this factor. The Court finds it to be neutral.

**II.     The Public Interest Factors**

*Administrative Difficulties Caused by Court Congestion*

The *Lear* Court noted that the median time interval from filing to trial of civil cases in the Southern District of Ohio is 27 months as compared to 17.7 months in the Eastern District. Nonetheless, the Court found that because these statistics did not provide data for patent cases, which tend to have special rules and procedures, this factor was neutral. No. 2:07-CV-406 slip op. at *5-6. The Federal Circuit endorsed this reasoning. *In re TS Tech USA Corp.*, 2008 WL 5397522 at *3.

Similarly, in this case, Plaintiff points out that the median time to trial in the District of Oregon is also 27 months, but does not point to median times for patent cases. He claims that transferring this case would cause a delay inconsistent with the interests of justice. While transferring this case may result in delay, the Court finds the facts presented here to be indistinguishable from those presented in *TS Tech*. Following the *TS Tech* Court's conclusion, this Court likewise finds this factor to be neutral.

*Having Localized Interests Decided at Home*

In this case, Plaintiff argues that this District has a strong local interest in this case because

10

allegedly infringing products have been sold here. However, *TS Tech* held that, in patent cases, when a defendant sells products all over the country, no specific venue has a dominant interest in resolving the issue of patent infringement. *See In re TS Tech*, 2008 WL 5397522 at *4 ("[h]ere, [the accused products] were sold throughout the United states, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue"). Thus, in most patent cases, this factor will be neutral. Nonetheless, where a forum has identifiable connections to the events giving rise to the suit, this factor may support litigating the case in that forum. *Volkswagen II*, 545 F.3d at 318.

On the other hand, Defendant argues that Oregon has a strong local interest in this case because it has extensive ties to the events that gave rise to this suit. *See Volkswagen II*, 545 F.3d at 318. It asserts that the various contracts signed between Plaintiff and Klarquist give rise to defenses of unclean hands and equitable estoppel. It points out that: the relevant contracts were signed in Oregon between parties residing in Oregon; the consultation underlying the contracts occurred in Oregon; Plaintiff had access to confidential information related to Microsoft Office 2007, while he was prosecuting the '592 patent in Oregon; and the vast majority of witnesses in this case are located in Oregon or its neighboring state of Washington. In contrast, Texas has no meaningful connection to this case other than Plaintiff's choice of forum. Defendant argues that, because all of the events leading up to this infringement suit occurred in Oregon, that District has a stronger local interest in this case.

The Court finds Defendant's arguments persuasive. While Oregon has identifiable ties to the parties, witnesses and events involved here, none of the parties reside in Texas and no party has asserted a cause of action under Texas state law. In short, Texas has no "relevant connection" to this

case. *See In re TS Tech*, 2008 WL 5397522 at *4. Thus, under the facts presented here, this factor weighs in favor of transfer.

*The Familiarity of the Forum with The Law that will Govern the Case*

To the extent that this case is a patent case, both this Court and the District of Oregon are equally capable of applying patent law. *See In re TS Tech*, 2008 WL 5397522 at *4; *Lear Corp.*, No. 2:07-CV-406, slip op. at 6. However, where a case involves interpretation of a particular state's laws, this factor may weigh in favor of transfer. *See TV-3, Inc. v. Royal Ins. Co.*, 28 F. Supp.2d 407, 420 (E.D. Tex. 1998) (transferring a diversity jurisdiction case to Mississippi because Mississippi law applied to the case). This factor can also weigh in favor of transfer when the application of state law may preclude the need for applying federal law. *See Interactive Music Tech., LLC v. Roland Corp.*, No. 6:07-cv-282, 2008 WL245142 at *9 (E.D. Tex. Jan. 29, 2008) (transferring case pursuant to venue selection clause in settlement agreement because, *inter alia*, interpretation of the settlement agreement would determine whether or not the plaintiff's patent infringement suit could proceed). However, this factor is neutral when the predominant issues in the case involve federal law, or when the foreign law to be applied is not particularly complicated. *See Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004); *Frederick v. Advanced Fin. Solutions, Inc.*, 558 F. Supp. 2d 699, 706 (E.D. Tex. 2007); *AMS Staff Leasing v. Starving Students, Inc.*, No. 3-03-cv-0283, 2003 WL 21436476 at *3 (N.D. Tex. June 18, 2003).

In this case, Defendant argues that the Klarquist contracts mandate venue in Oregon, and could give rise to various equitable defenses. At this early stage, the Court cannot determine if Defendant has standing to assert the contracts, whether or not they are valid and applicable to this case, and whether they give rise to equitable defenses. Nonetheless, because these issues must be

addressed under Oregon law, this factor is either neutral or weighs slightly in favor of transfer.

*Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

As explained above, under these facts, this factor is either neutral or weighs slightly in favor of transfer.

## CONCLUSION

Under the circumstances presented here, the convenience of witnesses and localized interests weigh in favor of transfer with the other factors neutral or weighing slightly in favor of transfer. This is a case that is significantly localized in the Northwest. Both parties are residents of the Northwest, and Microsoft's equitable defenses all arise out of conduct and contracts in the Northwest. No Texas resident is a party to this litigation, nor is any Texas state law cause of action asserted. All identified witnesses—with the possible exception of one—are located in the Northwest. This is not a case where witnesses are expected to be traveling from all over the country or world. In summary, there is little convenience to the parties for this case to remain in Texas, while there are several reasons why it would be more convenient for the parties to litigate this case in Oregon.

The Court finds that Defendant has shown that transfer to the District of Oregon would be clearly more convenient. *See Volkswagen II,* 545 F.3d at 315.

Accordingly, Defendant's Motion to Transfer is **GRANTED**.

**So ORDERED and SIGNED this 30th day of January, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE